IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-00793-MSK

CONTEMPORARY FINANCIAL SOLUTIONS, INC., and
MUTUAL SERVICE CORPORATION,

        Plaintiffs,

v.

MELISSA A. MILLER, and
DENNLY R. BECKER,

        Defendants.

**ORDER ON JOINT MOTION**

THIS MATTER comes before the Court on the parties' Joint Statement of Stipulated Facts **(#17)**, the parties' Joint Request for Determination of Preliminary and Permanent Injunction on Stipulated Facts **(#19)**, the Plaintiffs' Supplemental Opening Memorandum **(#18)** and Notice of Errata **(#22)**, the Defendants' Opening Brief **(#20)**, the Plaintiffs' Supplemental Response Brief **(#24)**, and the Defendants' Response Brief **(#25)**.[1]  Having considered the same, the Court finds and concludes as follows.

---

[1] The matter first came before the Court on the Plaintiffs' Motion for Preliminary Injunction **(#2, #3)**, to which the Defendants responded **(#12)**. At a hearing held on May 2, 2007 **(#13)**, the parties agreed to submit stipulated facts and simultaneous briefs on the issue of whether the Court should enter a permanent injunction. However, what the parties actually ask the Court to determine is whether their dispute should be decided in this forum or in ongoing arbitration proceedings. This is the ultimate issue presented by the Plaintiffs' Amended Complaint. Thus, the Court treats the parties' joint motion as one seeking the entry of a judgment based upon stipulated facts. However, in doing so, the Court notes that the parties' motion does not seek resolution of two of the Defendants' counterclaims, which remain unaffected by this ruling.

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Issue Presented

The Plaintiffs are Contemporary Financial Solutions, Inc. and Mutual Service Corporation.[2] In their Amended Complaint **(#14)**, they allege that the Defendants, Melissa A. Miller and her father, Dennly R. Becker, improperly commenced an arbitration proceeding against them before the National Association of Securities Dealers ("NASD") Office of Dispute Resolution. The Plaintiffs seek to enjoin the ongoing arbitration; conversely, the Defendants seek to compel arbitration.[3]

The issue presented is whether arbitration is required of the claims asserted by the Defendants against the Plaintiffs in the NASD arbitration. Pursuant to Fed. R. Civ. P. 42(b), the Court bifurcates this issue for separate determination.

## III. Findings of Fact

The parties have stipulated to the facts which they believe will enable this Court to rule on the bifurcated issue. Based thereon, the Court finds as follows.

The Plaintiffs are securities dealers and NASD members. As NASD members, the

---

[2] The Court refers to Contemporary Financial Solutions, Inc. as "CFS," and Mutual Service Corporation as "MSC," as needed.

[3] In their Amended Complaint, the Plaintiffs assert two claims. Claim 1 seeks the entry of an injunction against the NASD arbitration. Claim 2 seeks a declaration that the Plaintiffs are not required to defend against the Defendants' claims in the arbitration, and that the Defendants cannot recover on their underlying claims. The Defendants assert three counterclaims **(#26)**: one to compel arbitration, and two seeking damages from the Plaintiffs based upon alleged conduct of Robert Bryant.

Plaintiffs have agreed to be bound by the NASD Code of Arbitration,[4] which provides in Rule 10301 that: "Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or an associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated, under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer."

The Defendants are investors who claim that they bought unregistered securities (notes guaranteed by National Consumer Mortgage) from Robert Bryant during 2005 and 2006. Mr. Bryant was registered as a securities representative with Plaintiff CFS from February 2003 to December 31, 2004. During that time period, Mr. Bryant was an "associated person" for purposes of NASD Rule 10301. After December 31, 2004, he ceased being associated with CFS. The Plaintiffs never had a direct business relationship with either Defendant.

On August 6, 2004, the Arkansas Securities Department sent a letter to CFS advising that it had opened an investigation into Mr. Bryant's "offering and sales of investments in National Consumer Mortgage." On August 19, 2004, MSC responded to the Arkansas Securities Department on behalf of CFS, and committed to conducting its own review of Mr. Bryant. On May 12, 2005, MSC wrote another letter to the Arkansas Securities Department on behalf of CFS, stating that "CFS believes that Mr. Bryant did not engage in the sale of Private Money Investment Notes through National Consumer Mortgage[.]"

---

[4] The parties agree that the applicable Code provisions are those which were in effect prior to April 16, 2007.

In January 2007, the Defendants commenced NASD arbitration proceedings[5] against the Plaintiffs. In their statement of claim filed in the arbitration action, they allege, *inter alia*, that the Plaintiffs negligently failed to investigate and supervise Mr. Bryant, and negligently failed to determine to whom Mr. Bryant had marketed unregistered securities and to notify such individuals that Mr. Bryant had engaged in fraudulent conduct.

## IV. Analysis

The Plaintiffs contend that the claims asserted against them by the Defendants in the NASD arbitration are not subject to arbitration because the Defendants are not "customers" who can demand arbitration within the meaning of Rule 10301 in the NASD Code of Arbitration, and because the Defendants' claims do not fall within the scope of any arbitration agreement. The Defendants contend the precise opposite.

The Federal Arbitration Act applies when there is a written contract to arbitrate involving commerce. *See Cummings v. FedEx Ground Package System, Inc.,* 404 F.3d 1258 (10th Cir. 2005). The Tenth Circuit has repeatedly stated that "[t]he FAA manifests a liberal federal policy favoring arbitration." *See, e.g., 1mage Software, Inc. v. Reynolds and Reynolds Co.,* 459 F.3d 1044, 1055 (10th Cir. 2006) (internal quotes and cite omitted). An agreement to submit claims to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

If there is an agreement to submit claims to arbitration, then a court turns to its interpretation. If there are ambiguities as to the scope of an arbitration clause, they should be resolved in favor of arbitration. *See Volt Information Sciences, Inc. v. Board of Trustees of the*

---

[5] NASD Dispute Resolution Case No. 07-00271.

4

*Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989); *see also 1mage Software, Inc.,* 459 F.3d at 1055 (the parties' intentions are controlling but generously construed with regard to the scope of issues which must be arbitrated).[6]

Rule 10301 in the NASD Code of Arbitration acts as a written arbitration contract for purposes of the FAA. The Plaintiffs, as NASD members, are parties to such contract. *See MONY Securities Corp. v. Bornstein,* 390 F.3d 1340, 1342 (11th Cir. 2004) (citing *Washington Square Sec. Inc. v. Aune,* 385 F.3d 432, 435 (4th Cir. 2004)).

Rule 10301 provides that: "Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or an associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated, under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer." A related rule – Rule 10101 – describes matters which are eligible for arbitration and provides that the NASD Code of Arbitration "is prescribed and adopted . . . for the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD] . . . .: (c) between or among members or associated persons and public customers, or others[.]"

Although there does not appear to be Tenth Circuit authority addressing the application of Rule 10301, the other circuit courts that have addressed its application uniformly apply a two-part

---

[6] Unless the parties clearly agree otherwise, it is for the Court to determine whether there is an arbitration agreement and whether a dispute falls within the scope of such agreement. *See Bridgestone/Firestone, Inc. v. Local Union No. 998*, 4 F.3d 918, 921 (10th Cir. 1993). Here, the parties agree that this Court should determine whether the Defendants are entitled to demand arbitration and whether their claims fall within the scope of Rule 10301.

5

test to determine whether arbitration of a dispute is required.[7] To be subject to arbitration under Rule 10301, the dispute must (1) arise in connection with the NASD member's business, or in connection with the activities of an associated person; and (2) be between a customer and either an NASD member or "associated person" of an NASD member.[8] The parties both apply this framework.

### **"Arising in connection with the NASD member's business"**

With regard to this requirement, the Plaintiffs contend that the Defendants' claims did not arise in connection with the Plaintiffs' business, because there were no direct dealings between the Plaintiffs and the Defendants. The Defendants assert that their claims arose out of the Plaintiffs' business, because the claims are premised upon the Plaintiffs' allegedly negligent supervision of Mr. Bryant.

To be subject to arbitration under Rule 10301, a dispute must arise in connection with the NASD member's business. Every circuit that has addressed the issue has concluded that claims based upon an NASD member's supervision of an associated person "arise in connection with" the NASD member's business. *See MONY Securities Corp.*, 390 F.3d at 1344-45; *King*, 386 F.3d at 1370; *Vestax Securities Corp.*, 280 F.3d at 1082; *Washington Square Sec. Inc.,* 385 F.3d at 437. In the absence of authority to the contrary, this Court agrees. Here, the Defendants' claims are that the Plaintiffs were allegedly negligent in supervising Mr. Bryant while he was an

---

[7] *See MONY Securities Corp.*, 390 F.3d at 1343; *Vestax Securities Corp. v. McWood*, 280 F.3d 1078, 1081 (6th Cir. 2002); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001); *Washington Square Sec. Inc.,* 385 F.3d at 436; *California FINA Group, Inc. v. Herrin*, 379 F.3d 311, 316 (5th Cir. 2004); *Multi-Financial Securities Corp. v. King,* 386 F.3d 1364, 1367 (11th Cir. 2004).

[8] Usually, these two requirements are listed in reverse order, but are addressed in this order as a matter of clarity in the Court's analysis.

associated person. Thus, at least as to CFS, with whom Mr. Bryant was associated, claims of negligent supervision arise in connection with CFS' business.

As to MSC, however, it is not clear what it's business was, or whether supervision of Mr. Bryant was part of it.[9] Thus, as to MSC, the stipulated facts are inadequate to satisfy this element and as a result a trial is required on such issue.

### **"Between a customer and an associated person"**

The second part of the two-part test requires that the Defendants be "customers," either of the Plaintiffs or of an "associated person" of the Plaintiffs. The Plaintiffs argue that the Defendants were not customers of an associated person, because Mr. Bryant was not associated with CFS at the time the sales occurred, and the Defendants did not act on the offers made by Mr. Bryant while he was an associated person.[10]

The Defendants urge the Court to broadly interpret the term "customer" as being anyone apart from a broker or dealer. They also contend that their claims first arose when Mr. Bryant made solicitations during 2004, while he was still associated with CFS.

Who, specifically, is a "customer" within the meaning of NASD Rules 10101 and 10301 is also unaddressed in the Tenth Circuit. Unfortunately, the answer to this question is not clear in either the NASD rules or the caselaw of other circuits. The term "customer" is not defined in Rules 10101 or 10301. It appears in NASD Rule 0120, which provides definitions applicable to

---

[9] The allegations made by the Defendants in their statement of claim filed in the arbitration proceeding touch on these areas, but such allegations do not rise to the level of stipulated facts.

[10] The Plaintiffs have also argued that the Defendants' claims against them lack merit. This Court does not reach the merits of the Defendants' claims, and simply must determine in which forum they must be heard. *See John Hancock Life Ins. Co.*, 254 F.3d at 57.

all of the NASD rules "unless the context otherwise requires." However, Rule 0120(g) defines "customer" only in the negative stating: "The term 'customer' shall not include a broker or dealer." Thus, arguably, a customer can be anyone other than a broker or dealer.

Courts generally have construed the term "customer" broadly, but not so broadly as to include anyone other than a broker or dealer. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.*, 264 F.3d 770, 772 (8th Cir. 2001); *BMA Financial Services, Inc. v. Guin*, 164 F. Supp. 2d 813, 818-19 (W.D. La. 2001). Other courts recognize that the definition of "customer" must not be so broad that it would upset the reasonable expectations of the NASD members, as parties to the "contract" created by the NASD rules. *See BMA Financial Services, Inc.,* 164 F. Supp. 2d at 819. Instead, they look at the nature of the relationship between the investor and the NASD member or its associated person. *See id.* at 820.

In looking at these relationships, courts agree that an investor's status as a "customer" is determined by "the time of the events providing the basis for the allegations." *See Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993); *Ryan, Beck & Co, LLC v. Fakih*, 268 F. Supp. 2d 210, 228 (E.D.N.Y. 2003); *Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 340 (D.N.J. 1994); *see also World Group Securities, Inc. v. Sanders*, No. 2:06-CV-00107 PGC, 2006 WL 1278738 (D. Utah May 8, 2006) (unpublished).[11] In addition, to be a customer of an "associated person," the investor need not have any knowledge of the associated person's

---

[11] Some of these cases involved questions of whether an NASD member who was a successor-in-interest could be required to defend claims in an arbitration proceeding, which is not the circumstance presented here. *See Wheat, First Securities Inc.*, 993 F.2d at 819-21; *Gruntal & Co., Inc.,* 854 F. Supp. at 339-41. Nevertheless, such cases are instructive as to how the investor's relationship with the NASD member or associate should be scrutinized, because they show what an NASD member's reasonable expectations are as to what claims should be submitted to arbitration.

8

affiliation with the NASD member, nor need the associated person have been given authority by the NASD member to conduct the particular transaction. *See Vestax*, 280 F.3d at 1081-82*; BMA Financial Services, Inc.*, 164 F. Supp. 2d at 820.

The Eighth Circuit, relying upon various other NASD Rules, concluded that to be a "customer" for purposes of Rule 10301, an individual must be "involved in a business relationship with an NASD member that is related directly to investment or brokerage services." *See Fleet Boston Robertson Stephens, Inc.*, 264 F.3d at 772. It also concluded that a "customer" does not include a person who has merely received financial advice without any investment or brokerage related services. *Id.* at 773. In reaching these conclusions, the Eighth Circuit specifically relied upon NASD Rule 2270, which provides that a "customer" is "any person who, in the regular course of such member's business, has cash or securities in the possession of such member."[12] Although it did not state so expressly, the Eighth Circuit apparently determined that a broader definition of "customer" would impermissibly subject an NASD member to arbitration of claims that are too remote from the services which the NASD member provides. *See id.* at 772 ("We do not believe that the NASD Rules were meant to apply to every sort of financial service an NASD member might provide, regardless of how remote that service might be from the investing or brokerage activities, which the NASD oversees.")

This Court agrees that to be a "customer" of an "associated person" under NASD Rule 10301, an individual must have received investment or brokerage services, not just financial advice, from the "associated person. Furthermore, the investment or brokerage services must

---

[12] Similarly, in the margin requirements context, a "customer" is, among other things, someone for whom, or to whom, "securities are purchased or sold." NASD Rule 2520(a)(3).

9

have been provided during the time that the "associated person" is associated with an NASD member. Finally, the events that give rise to the claims, here negligent supervision, must occur during the period of association and the provision of investment/brokerage services. Put in the context of this case, for the Defendants to be customers of an "associated person", Mr. Bryant had to provide them with investment/brokerage services between February 2003 and December 31, 2004, the period when he was associated with CFS, and during which it had a duty to supervise him.

If there is a factual dispute as to whether a person satisfies the definition of "customer," then an evidentiary hearing or trial is required. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003); *see also BMA Financial Services, Inc.*, 164 F. Supp. 2d at 818. Here, the Court lacks sufficient evidence of the nature of the relationship between the Defendants and Mr. Bryant to determine whether they were his "customers" while he was associated with CFS. For instance, the Court cannot determine whether Ms. Miller, Mr. Becker, or both had a relationship with Mr. Bryant during 2004 which pertained to investment or brokerage services, or whether he merely solicited them with investment advice and sold Ms. Miller insurance. Similarly, the Court also lacks sufficient evidence of the nature of Mr. Bryant's relationship with MSC., because the parties' stipulations show only that he was associated with CFS.

**IT IS THEREFORE ORDERED** that:

(1) The parties' Joint Request for Determination of Preliminary and Permanent Injunction on Stipulated Facts **(#19)** is **DENIED,** as is Plaintiffs' Motion for Preliminary and Permanent Injunction **(#17)**.

(3) A hearing is set pursuant to Fed. R. Civ. P. 16 on **December 14, 2007 at 8:30**

**a.m.** in Courtroom A901 of the United States Courthouse located at 901 19th Street, Denver, Colorado, for purposes of addressing whether discovery is required and what evidence need be presented at trial. The evidentiary issues will be limited to those specified in this opinion and all stipulated facts will be deemed such at the trial. Counsel shall bring their calendars and may appear by telephone. To appear telephonically, counsel and any *pro se* parties shall contact the Courtroom Deputy at **303-335-2185** no later than two court days before the hearing to make arrangements.

Dated this 20th day of November, 2007

                                        **BY THE COURT:**

                                        */s/ Marcia S. Krieger*
                                        _____
                                        Marcia S. Krieger
                                        United States District Judge